UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GASTELUM,<br><br>    Plaintiff,<br><br> v.<br><br>BEST BUY, INC.,<br><br>    Defendant. | Case No. 1:23-cv-00244-ADA-BAM<br><br>**FINDINGS AND RECOMMENDATIONS DECLINING SUPPLEMENTAL JURISDICTION AND DISMISSING STATE LAW CLAIMS WITHOUT PREJUDICE** |

  On February 17, 2023, Plaintiff Fernando Gastelum, proceeding *pro se*, initiated this action against Defendant Best Buy, Inc. (Doc. 1.) The Complaint asserts claims for injunctive relief under the Americans with Disabilities Act of 1990 ("ADA"), a claim for statutory damages under California's Unruh Civil Rights Act ("Unruh Act"), and a claim for damages under California Disabled Persons Act pursuant to California Civil Code §§ 54-54.3. (*Id.*) Defendant has not yet appeared in this action, and it appears that Plaintiff served Defendant's agent. (Doc. 7.)

  On February 24, 2023, the Court ordered Plaintiff to show cause why the Court should not decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim for the reasons stated in *Vo v. Choi*, 49 F.4th 1167 (9th Cir. 2022) and *Arroyo v. Rosas*, 19 F.4th 1202 (9th Cir.

1

2021).  (Doc. 4.)  Plaintiff filed a response on March 9, 2023.  (Doc. 5.)  In his response, Plaintiff argues for the Court's retention of jurisdiction over his Unruh Act claims as other California District Courts have exercised supplemental jurisdiction over his Unruh Act claims, the *Gibbs* factors favor exercising supplemental jurisdiction, and the Court has diversity jurisdiction over these claims.  (*Id.*)  The same day, Plaintiff also filed a First Amended Complaint, alleging Diversity Jurisdiction pursuant to 28 U.S.C. § 1332 and Federal Question Jurisdiction pursuant to 28 U.S.C. § 1331.  (Doc. 6.)  For the reasons discussed below, the Court recommends finding that that the Court does not have diversity jurisdiction, declining supplemental jurisdiction and dismissing Plaintiff's state law claims without prejudice.

## I.   LEGAL STANDARD FOR DIVERSITY JURISDICTION

For a federal court to exercise diversity jurisdiction, the citizens must be of different states and the amount in controversy must exceed $75,000.  28 U.S.C. § 1332(a).  The amount in controversy is generally determined from the face of the pleadings.  *See Crum v. Circus Circus Enterprises*, 231 F.3d 1129, 1131 (9th Cir. 2000).  The Ninth Circuit noted that the party asserting diversity jurisdiction must prove that the amount in controversy exceeds $75,000 and cautioned that "[c]onclusory allegations as to the amount in controversy are insufficient." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th Cir. 1992)).

## II.   DISCUSSION OF DIVERSITY JURISDICTION

Plaintiff alleges that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), as Plaintiff is a citizen of Arizona, Defendant is a citizen of Minnesota, and the amount in controversy "to the best of Plaintiff's estimate, exceed[s] the statutory threshold of $75,000.00." (Doc. 6 ¶ 11, Doc. 5 at 8-11.)  Plaintiff's First Amended Complaint states that he seeks: (1) injunctive relief pursuant to the ADA and Unruh Act; (2) damages under the Unruh Act "which provides for actual damages and a statutory minimum of $4,000 for each encounter, trebled to $12,000;" (3) statutory damages pursuant to the Disabled Persons Act; (4) punitive damages to punish Defendant and deter others in "an amount to be proven at trial;" and (5) in "the event Plaintiff is required to hire counsel, for reasonable attorney fees, litigation expenses and costs of

suit, pursuant to 42 U.S.C. § 12205." (Doc. 6 at 7-8.) The Court will address the each form of requested relief in turn in determining whether Plaintiff's complaint exceeds the statutory threshold.

First, Plaintiff seeks injunctive relief "to compel Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act" and injunctive relief "requiring Defendant to adopt written and enforceable 'reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." (Doc. 6 at 7.) In actions seeking declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation. *Corral v. Select Portfolio Serv'g, Inc.*, 878 F.3d 770, 775 (9th Cir. 2017); *Chapman v. Deutsche Bank Nat'l Trust Co.*, 651 F.3d 1039, 1045 n.2 (9th Cir. 2011). Generally, the amount in controversy is assessed through the "either viewpoint rule," meaning that the amount in controversy in the case is the pecuniary result to either party which the judgment would directly produce. *Corral*, 878 F.3d at 775; *In re Ford Motor. Co./Citibank (S. Dakota)*, *N.A.*, 264 F.3d 952, 958 (9th Cir. 2001). In recent Unruh Act cases where courts have remanded and ruled on the amount in controversy requirement with respect to injunctive relief, parties have submitted documentation or declarations to support their estimated injunctive relief values. *See Martinez v. Epic Games, Inc.*, No. CV1910878CJCPJWX, 2020 WL 1164951, at *3–4 (C.D. Cal. Mar. 10, 2020) (examining declarations containing estimates for making websites compliant with ADA and Unruh Act standards); *Mejico v. Online Labels, Inc.*, No. 518CV02636ODWSHKX, 2019 WL 3060819, at *4 (C.D. Cal. July 12, 2019) (finding remediation costs and bid estimates to be relevant to the amount in controversy).

Here, Plaintiff's complaint does not estimate the value or discuss the nature of injunctive relief beyond a broad request to compel Defendants to comply with statutory requirements. (Doc. 6 at 3, 7.) At the pleading stage, Plaintiff does not submit supporting estimates or declarations, but in his Response to the Court's Order to Show Cause ("OSC"), Plaintiff notes that the "compliance cost with the ADA injunctive relief is within the knowledge of the Defendant, but common sense and good reason lead to a conclusion that general remedy sought… and the

3

specific remedy sought… are certain to exceed $75,000." (Doc. 5 at 9-10.)  In his response to the OSC, without an estimate or citation to authority, Plaintiff speculates that "[j]ust the requirement that Best Buy adopt written and enforceable 'reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities' would require each of Best Buy's store[s] to properly space the merchandise and modify the accessibility to service counters to spend the jurisdictional amount by a factor of 10." (*Id.*)  However, Plaintiff's complaint also alleges that the "barriers identified above are easily removed without much difficulty or expense. They are the types of barriers that are readily achievable to remove." (Doc. 6 ¶ 21.)  It is, therefore, speculative whether remedying these challenged barriers will require minor, inexpensive fixes or major, costly construction.  (Doc. 6 ¶¶ 16-18.)  Further, as explained more fully below, Plaintiff seeks to extrapolate additional barriers beyond the barriers encountered solely at Best Buy Store #121 at 7660 N. Blackstone Ave., Fresno, CA 93720 to achieve the requisite amount in controversy.  (Doc. 5 at 9, 10.)  However, this action involves barriers Plaintiff encountered at a single Best Buy store, and not barriers encountered across a vast spectrum of Best Buy stores.  Accordingly, the request for injunctive relief is too speculative for the Court to appropriately include it in the amount in controversy.  *See Matheson*, 319. F.3d at 1090-91; *Jackson v. Am. Bar Ass'n*, 538 F.2d 829, 831 (9th Cir. 1976) (finding the amount in controversy requirement not met when the protected rights asserted "appear to be intangible, speculative, and lack the capability of being translated into monetary value").

Second, Plaintiff seeks trebled damages from Unruh Act violations and points to four barriers to accessibility: (1) "Clear width of accessible routes was less than 36" between doors, columns, counters and columns and displays of merchandise;" (2) "The bathroom door required the push-pull force greater than 5 lbs;" (3) "The bathroom door required the twisting of the wrist;" and (4) "The service counters were cluttered with merchandise and equipment and were unusable." (Doc. 6 ¶ 17.)  The Unruh Act provides for "actual damages ... up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars" for "each and every offense" of prohibited discrimination.  Cal. Civ. Code § 52(a).  While the phrase "each

4

1  offense" is undefined, courts have interpreted it according to its most natural reading as "each
2  violation." *Doran v. Embassy Suites Hotel*, 2002 WL 1968166, at *5 (N.D. Cal. Aug. 26, 2002);
3  *Langer v. Joy Hosp. Inc.*, No. 2:19-CV-08950-SK, 2021 WL 5873079, at *2 (C.D. Cal. Oct. 29,
4  2021). Construed in this manner, § 52(a) "provides for statutory damages based on each specific
5  instance of non-compliance" under the Unruh Act. *Id*. However, district courts have been
6  disinclined to award treble damages on motions for default judgment where the record is
7  undeveloped. *See Spikes v. Shockley*, No. 19-CV-523 DMS (JLB), 2019 WL 5578234, at *6
8  (S.D. Cal. Oct. 28, 2019) ("while Defendant bears the burden of this default judgment due to his
9  failure to respond, there is no indication Plaintiff's injury would not be adequately redressed with
10 statutory minimum damages, attorney's fees, and injunctive relief. Therefore, the Court declines
11 to award treble damages for Plaintiff and finds the award of statutory damages is sufficient.");
12 *Spikes v. Mann*, No. 19-CV-633 JLS (RBB), 2020 WL 5408942, at *6 (S.D. Cal. Sept. 9, 2020)
13 ("there is no indication the Plaintiff's injury cannot be redressed with the statutory minimum
14 damages, injunctive relief, and attorney's fees. Therefore, the Court declines to award statutory
15 treble damages…"). At this stage of the pleadings, where the record is underdeveloped, it is
16 difficult to infer that Plaintiff is entitled to treble damages. From the face of the complaint and
17 Plaintiff's allegations, it appears that Plaintiff would be entitled to statutory damages of $4,000
18 for each of the four barriers to accessibility he encountered, adding up to approximately $16,000
19 for Unruh Act violations. (Doc. 6 at 8.) Even assuming *arguendo* that Plaintiff's statutory
20 damages were trebled, this would amount to $64,000, which by itself is under the $75,000 amount
21 in controversy threshold. (*Id.*)
22       Third, Plaintiff seeks statutory damages pursuant to the California Disabled Persons Act.
23 (Doc. 6 at 8.) However, "[i]f a plaintiff prevails on a damages claim under both [Unruh Act and
24 California Disabled Persons Act] statutes, double recovery is not permitted." *Rodriguez v.*
25 *Barrita, Inc.*, 10 F. Supp. 3d 1062, 1074 (N.D. Cal. 2014) (citing *Munson v. Del Taco, Inc.*, 46
26 Cal. 4th 661, 675, 208 P.3d 623, 632 (2009). Accordingly, Plaintiff could not derive statutory
27 damages from both Unruh Act and California Disabled Persons Act violations and cannot include
28 both statutory damages in the amount in controversy.

Fourth, Plaintiff seeks punitive damages pursuant to California Civil Code § 3294 "for the sake of example and by way of punishing Defendant in an amount sufficient to deter, make example of, and punish Defendant in an amount to be proven at trial but no less than sufficient to punish, deter, and make example of Defendant for its egregious misconduct" and "in order to deter other similarly situated public accommodations from continuing their unrelented assault on the disabled in an amount to be proven at trial but no less than sufficient to punish, deter, and make example of Defendant for its egregious misconduct." (Doc. 6 at 8., Doc. 5 at 11.)

California Civil Code Section 3294 states: "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." Cal. Civ. Code § 3294. However, district courts have called into question whether punitive damages are recoverable in addition to treble damages under the Unruh Act. *See Doran v. Embassy Suites Hotel*, No. C-02-1961 EDL, 2002 WL 1968166, at *1-3 (N.D. Cal. Aug. 26, 2002); Peters v. CJK Assocs., LLC, No. CIV.S 03 1388 LKK/KJ, 2003 WL 24205920, at *3-4 (E.D. Cal. Oct. 29, 2003); *Aguilar v. Marinello Sch. of Beauty*, No. CV0900854DMGAJWX, 2010 WL 11582978, at *10 (C.D. Cal. Mar. 29, 2010) ("Where, as here, the social objectives pursued by two categories of damages sought in one cause of action are the same, an award for both would create an impermissible double recovery… Accordingly, the Court agrees with the other district courts that have considered this issue and finds Plaintiff ineligible for punitive damages under section 3294."). In *Doran v. Embassy Suites Hotel*, the district court noted that "the Legislature took the importance of disability rights into account when it crafted the stringent remedies of minimum statutory damages, even in the absence of actual damages, and treble actual damages and attorney's fees, which can be a sizeable amount." *Doran*, 2002 WL 1968166, at *3. "At the same time that the Legislature specifically provided for these several types of damages in Civil Code sections 52(a) and 54.3(a), it chose not to provide for unlimited punitive damages." *Id.* The court also compared the remedies in other similar statutes, and concluded that the "Unruh Act, like the MRL and other statutes such as the Song–Beverly Act and the Unfair Business Practices Act,

6

expressly provide for judicial remedies that are punitive in nature, rendering the catchall punitive damages remedy of Civil Code section 3294 unavailable." *Id.* It is therefore unclear whether Plaintiff may recover any punitive damages in this case.

Moreover, Plaintiff's allegations regarding his entitlement to punitive damages appear to rest upon four sentences in his complaint:

> 40. Defendant intentionally violates the civil rights of the disabled community, including Plaintiff, subjecting it to punitive damages pursuant to Cal. Civ. Code Article 3, § 3294. 41. Plaintiff alleges that voluntary and intentional segregation and discrimination of the type alleged here, and indeed any segregation and discrimination against any member of a disability class, is malicious and oppressive as a matter of law. 42. Plaintiff seeks punitive damages for the sake of example and by way of punishing Defendant in an amount sufficient to deter, make example of, and punish Defendant. 43. Punitive damages are necessary to deter other similarly situated public accommodations from continuing their unrelenting assault on the disabled.

(Doc. 6 ¶¶ 40-43.) While a complaint does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). These allegations correspond to the grounds for Section 3294 relief, but they are a mere formulaic recitation of Section 3294 requirements. For the above reasons, Plaintiff's request for punitive damages is too speculative and conclusory for the Court to appropriately include it in the amount in controversy. *See Matheson*, 319. F.3d at 1090-91; *Jackson v. Am. Bar Ass'n*, 538 F.2d 829, 831 (9th Cir. 1976).

Fifth, Plaintiff's complaint requests "reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205" in "the event Plaintiff is required to hire counsel." (Doc. 6 at 8.) "[As] a general rule, attorneys' fees are excludable in determining the amount in controversy because, normally, the successful party does not collect his attorneys' fees in addition to or as part of the judgment." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998) (quoting *Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 474 (1st Cir. 1979)). But, "attorneys' fees can be taken into account in determining the amount in controversy if a statute [or contract]

7

1  authorizes fees to a successful litigant." *Id.* (quoting *Goldberg v. CPC Int'l Inc.*, 678 F.2d 1365,
2  1367 (9th Cir. 1992), cert. denied, 459 U.S. 945 (1982)).  The Unruh Act permits recovery of
3  attorney's fees.  Cal. Civ Code § 52(a); *Molski*, 481 F.3d at 731.  However, Plaintiff is
4  representing himself *pro se* and has not indicated an intent to hire counsel.  Accordingly, the
5  request for attorney's fees, expenses, and costs is too speculative and conclusory for the Court to
6  appropriately include it in the amount in controversy.  *See Matheson*, 319. F.3d at 1090-91;
7  *Jackson v. Am. Bar Ass'n*, 538 F.2d 829, 831 (9th Cir. 1976).

8  Finally, Plaintiff argues that "remedies are requested against Best Buys, Inc. not just
9  against the individual store," appearing to argue that Defendant is liable for every Best Buy store
10 rather than the store in which Plaintiff encountered barriers to accessibility.  (Doc. 5 at 9, 10.)
11 Plaintiff contends that the "particular store itself is not the 'public accommodation' against whom
12 remedies are sought, it is but a single *place* of public accommodation," and this "distinction is
13 relevant to the amount of controversy insofar as the remediation required by the ADA and Unruh
14 is not limited to 'places of public accommodation' but to the 'public accommodations'
15 themselves."  (*Id* at 9*.*)

16 The ADA requires: "No individual shall be discriminated against on the basis of disability
17 in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or
18 accommodations of any place of public accommodation by any person who owns, leases (or
19 leases to), or operates a place of public accommodation." 42 U.S.C.A. § 12182(a).  The
20 definition for a "public accommodation" includes "a bakery, grocery store, clothing store,
21 hardware store, shopping center, or other sales or rental establishment." 42 U.S.C.A. §
22 12181(7)(E).  This singular definition and the remainder of the statute suggest liability against the
23 single store or owner in which an individual encountered discrimination.  Additionally, Plaintiff's
24 complaint notes, "Store [Best Buy Store #121 at 7660 N. Blackstone Ave., Fresno, CA 93720] is
25 a place of public accommodation." (Doc. 6 ¶ 9.)  The factual allegations in Plaintiff's complaint
26 all pertain to Plaintiff's travel to and barriers encountered at this single store.  (*Id.*  ¶¶ 15-25.)
27 From the face of his complaint, Plaintiff alleges ADA and Unruh Act liability against this
28 individual store only, and his belief that he may impose liability on every Best Buy store through

this complaint is misplaced. For the amount in controversy, Plaintiff's allegations are accordingly limited to the barriers to accessibility he encountered at Best Buy Store #121 at 7660 N. Blackstone Ave., Fresno, CA 93720, and he may not multiply the statutory damages by the number of Best Buy stores in California.

Examining the amount in controversy from the face of Plaintiff's complaint, Plaintiff has only demonstrated an amount of approximately $16,000 to $64,000 resulting from Unruh Act statutory damages. For these reasons, the $75,000 amount in controversy is not met and the Court should find that it does not have diversity jurisdiction over Plaintiff's Unruh Act claim, California Disabled Persons Act claim, and any other state law construction-related accessibility claim. *See* 28 U.S.C. § 1332(a).

### III.   LEGAL STANDARD FOR SUPPLEMENTAL JURISDICTION

In an action over which a district court possesses original jurisdiction, that court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Even if supplemental jurisdiction exists, district courts have discretion to decline to exercise supplemental jurisdiction:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The Supreme Court has described 28 U.S.C. § 1367(c) as a "codification" of the principles of "economy, convenience, fairness, and comity" that underlie the Supreme Court's earlier jurisprudence concerning pendent jurisdiction. *City of Chicago v. Int'l Coll. of*

*Surgeons*, 522 U.S. 156, 172-73 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) ("*Gibbs*"). In *Gibbs*, the Supreme Court noted that it "has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Gibbs,* 383 U.S. at 726. The justification for pendent jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." *Id.* The Court emphasized that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.*

District courts may decline to exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors" including "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *City of Chicago*, 522 U.S. at 173. The supplemental jurisdiction statute "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Cohill*, 484 U.S. at 350).

The Ninth Circuit does not require an "explanation for a district court's reasons [for declining supplemental jurisdiction] when the district court acts under" 28 U.S.C. §§ 1367(c)(1)-(3), *San Pedro Hotel Co. v. City of Los* Angeles, 159 F.3d 470, 478 (9th Cir. 1998), but does require a district court to "articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the *Gibbs* values provide compelling reasons for declining jurisdiction in such circumstances." *Executive Software N. Am. Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1558 (9th Cir. 1994); *Vo*, 49 F.4th at 1169-1170 ("a district court must: (1) sufficiently explain 'why the circumstances of the case are exceptional' under § 1367(c)(4); and (2) show that 'the balance of the *Gibbs* values provides compelling reasons for declining jurisdiction in such circumstances.'"). According to the Ninth Circuit, this "inquiry is not particularly burdensome." *Executive Software N. Am. Inc*, 24 F.3d at 1558*; Vo*, 49 F.4th at

1171. When declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(4), "the court must identify the predicate that triggers the applicability of the category (the exceptional circumstances), and then determine whether, in its judgment, the underlying *Gibbs* values are best served by declining jurisdiction in the particular case (the compelling reasons)." *Executive Software N. Am. Inc*, 24 F.3d at 1558.

### IV. DISCUSSION OF SUPPLEMENTAL JURISDICTION

This Court concludes, as have numerous courts before it, the circumstances here are exceptional. *See e.g.*, *Garcia v. Maciel*, No. 21-CV-03743-JCS, 2022 WL 395316, at *2 (N.D. Cal. Feb. 9, 2022) (collecting cases). The Ninth Circuit has held that a district court properly declined supplemental jurisdiction in a joint Unruh Act and ADA case based upon the heightened pleading requirements California imposes upon high-frequency litigants. *Vo*, 49 F.4th. The "high-frequency litigants" subject to those heightened pleading requirements are defined as:

> A plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation.

Cal. Civ. Proc. Code § 425.55(b)(1). "High-frequency litigants" are subject to a special filing fee and further heightened pleading requirements. *See* Cal. Gov. Code § 70616.5; Cal. Civ. Proc. Code § 425.50(a)(4)(A).

Although Plaintiff's response to the Court's OSC did not include the number of complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the complaint in this action, a Pacer review shows that Plaintiff filed at least 19 cases in California District Courts. Plaintiff would thus be classified as a "high-frequency litigant" had he filed this case in California state court. Indeed, as noted in the OSC, "at least one Eastern District court has indicated that Plaintiff appears to be a high-frequency litigant." (Doc. 4 at 3 (citing *Gastelum v. Cotton On USA, Inc*., 1:22-cv-01194-JLT-SAB, Doc. 11 at p. 4).)

Even if Plaintiff were not a high-frequency litigant, the Ninth Circuit has held that district

1  courts need not adjudicate this threshold matter. Forcing the district court to determine if Plaintiff
2  is a high-frequency litigant would itself run afoul of the *Gibbs* values—especially comity.
3  *Accord Brooke v. Sarodia Suncity LLC*, No. ED CV-22-1374 JGB SPX, 2022 WL 17363913, at
4  *4 (C.D. Cal. Nov. 3, 2022), citing *Vo*, 49 F.4th at 1173. As *Gibbs* explains, "[n]eedless decisions
5  of state law should be avoided both as a matter of comity and to promote justice between the
6  parties, by procuring for them a surer-footed reading of applicable law" by the state courts. *Vo*,
7  49 F.4th at 1173–74, citing *Gibbs*, 383 U.S. at 726. If the federal district court is required to
8  adjudicate these threshold matters, it will "deprive the state courts of their critical role in
9  effectuating the policies underlying those reforms." *Id.*, citing *Arroyo*, 19 F.4th at 1213.

10  If this Court were to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim,
11  the "distinctive configuration of California-law rules—which pair a damages remedy with special
12  procedural requirements aimed at limiting suits by high-frequency litigants—would be rendered
13  ineffectual." *See Arroyo,* 19 F.4th at 1211–12. Indeed, courts have recognized that California's
14  heightened pleading and filing requirements are not limited to accessibility related Unruh Act
15  claims and apply to all construction-related accessibility claims. *See Gastelum v. TJX Companies*,
16  No. 21CV1435-GPC(BLM), 2022 WL 2906492, at *8 (S.D. Cal. July 22, 2022) ("To the extent
17  Plaintiff, without explanation, seeks to amend the FAC to allege a violation of the Disabled
18  Persons Act ("DPA"), Cal. Civ. Code § 54 *et seq.*, the heightened pleading requirement also
19  applies to the DPA."); *Gastelum v. TJX Companies, Inc.*, No. 21-CV-06714-VKD, 2023 WL
20  411345, at *10 n. 5 (N.D. Cal. Jan. 25, 2023) ("In any event, California's heightened pleading
21  requirement also applies to the Disabled Persons Act."); *Gilbert v. Singh*, No. 1:21-CV-01338
22  AWI HBK, 2023 WL 2239335, at *2 (E.D. Cal. Feb. 27, 2023) (noting that a plaintiff's claims
23  under "Cal. Health & Safety Code §§ 19955 and 19959 are 'construction-related accessibility
24  claims' that are subject to the same pleading and filing requirements as Plaintiff's Unruh Act
25  claim") (citing *Arroyo,* 19 F.4th at 1206); *see* Cal. Civ. Code § 55.52(a)(1) ("'Construction-
26  related accessibility claim' means any civil claim in a civil action with respect to a place of public
27  accommodation, including, but not limited to, a claim brought under Section 51, 54, 54.1, or 55
28  ...").

"By enacting restrictions on the filing of construction-related accessibility claims, California has expressed a desire to limit the financial burdens California's businesses may face for claims for statutory damages under the Unruh Act. Plaintiffs who file these actions in federal court evade these limits and pursue state law damages in a manner inconsistent with the state law's requirements." *Arroyo,* 19 F.4th at 1206-07, 1212; (Doc. 4, OSC at 2.) It is not, under the *Gibbs* factors, "fair" to defendants that a plaintiff may pursue construction-related accessibility claims in this Court while evading the limitations California state law has imposed on such claims. In addition, to allow federal courts to become an "escape hatch" for plaintiffs is also an affront to the comity between federal and state courts. *Vo*, 49 F.4th 1169 (affirming the district court holding that allowing federal courts to be an 'escape hatch' for plaintiffs seeking to avoid the heightened requirements would be an "affront to the comity between federal and state courts.")

Moreover, permitting high-frequency litigants to evade California's limitations on construction-related accessibility claims places tremendous strain on the federal courts. As noted, Plaintiff has filed at least 19 cases in California district courts within the year preceding the filing of this lawsuit. This high-frequency filing suggests that it is precisely because the federal courts have not adopted California's limitations on such claims that federal courts have become the preferred forum for such claims. *See generally Garibay v. Rodriguez*, 2019 WL 5204294, at *4 (C.D. Cal. 2019) ("Indeed, those reasons, if true at all, do not explain why nearly 9 times more construction-related accessibility actions are being filed in the Central District in 2019 than were filed in 2013.") Permitting federal courts "to become an escape hatch" that allows plaintiffs like Gastelum to pursue such claims offends the comity between state and federal courts. Declining to exercise supplemental jurisdiction over the state law claims early in the litigation preserves federal judicial resources for the consideration of federal claims, while still allowing plaintiffs to pursue their state law claims in state court. *See e.g.*, *Brooke*, 2022 WL 17363913, at *5 ("Continuing to exercise supplemental jurisdiction in these extraordinary circumstances would unnecessarily force this Court to expend resources to resolve state law claims for relatively modest statutory damages and attorneys' fees even after the federal claim is moot.")

Plaintiff Gastelum argues that fairness, economy, and convenience disfavor declining supplemental jurisdiction because litigating his claims in separate forums would duplicate work and increase costs. (Doc. 5.) However, the Court finds that fairness favors declining jurisdiction because Plaintiff can pursue identical remedies in state court. Exercising the Court's discretion to decline supplemental jurisdiction does not deprive Plaintiff of any remedies. Indeed, an ADA claim for injunctive relief remains pending in this Court.

Accordingly, the Court concludes that California's enactment of laws restricting construction-related accessibility claims, combined with the burden the ever-increasing number of such cases poses to the federal courts, presents "exceptional circumstances" and "compelling reasons" that justify the Court's discretion to decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim under 28 U.S.C. § 1367(c)(4). *See Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017) (relying on *Hanna v. Plummer*, 380 U.S. 460, 467-68 (1965), for the proposition that federal courts are permitted to decline supplemental jurisdiction to discourage improper forum-shopping, such as ADA plaintiffs' "use [of] federal court as an end-around to California's pleading requirements"). Moreover, the Court sees no prejudice in requiring Plaintiff Gastelum's state-law claims be heard in state court. *See Garibay*, 2019 WL 5204294, at *6 ("[D]eclin[ing] supplemental jurisdiction does not deprive plaintiff of any remedies. Nor does it allow an ADA claim for injunctive relief to go unaddressed.").

For all of the foregoing reasons, it is hereby recommended that the Court, in its discretion, decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim, California Disabled Persons Act claim, and any other state law construction-related accessibility claim and that any such claims be dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c)(4).

### V. CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court HEREBY RECOMMENDS as follows:

1. The Court find that it does not have diversity jurisdiction over Plaintiff's Unruh Act claim, California Disabled Persons Act claim, and any other state law construction-related accessibility claim;

2. The Court decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act

        claim, California Disabled Persons Act claim, and any other state law construction-related accessibility claim; and

3.     Plaintiff's Unruh Act claim, California Disabled Persons Act claim, and any other state law construction-related accessibility claim be dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c)(4).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 21, 2023**            /s/ *Barbara A. McAuliffe*
                                                           UNITED STATES MAGISTRATE JUDGE